UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| CATHERINE BOSLEY, also known as CATHERINE BALSLEY, et al., | ) ) ) | Case No.  4:04CV2529 |
| Plaintiffs, | ) ) | JUDGE JAMES S. GWIN Magistrate Judge George J. Limbert |
| v. | ) ) | |
| 21 WFMJ, et al., | ) ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendants. | ) | |


This case is again before the Court, this time regarding an alleged settlement that occurred between the parties.  ECF Dkt. #329.  On November 25, 2005, Attorney David Marburger, co-counsel for Defendants 21 WFMJ and WFMJ Television, Inc. filed a notice of settlement with the Court indicating that:

> Defendants WFMJ Television, Inc., Michelle Nicks, and John Urchak hereby notify the Court that they have effectively reached a settlement with the plaintiffs.  The documents consummating the settlement are being drafted now.  They have not yet been circulated, or (obviously) signed. Accordingly, there is no need to impanel a jury for trial on Monday, November 28, 2005.

*Id*.  Electronic signatures were executed for Attorneys Marburger and Bolton, counsel for Defendants 21 WFMJ and WFMJ Television, Inc., Attorney John Juhasz, counsel for Defendant Michelle Nicks, and Attorney James Lanzo, counsel for Defendant John Urchak.  *Id*.  On November 26, 2005, the Honorable Judge James S. Gwin signed and docketed an Order acknowledging the notice of settlement and dismissing the case with prejudice.  ECF Dkt. #331.

On December 15, 2005, Plaintiffs filed a motion to enforce the settlement that Attorney Kabat for Plaintiffs and Attorney Bolton for Defendants had negotiated by telephone on November 23, 2005.  ECF Dkt. #333.  Defendants filed a motion in opposition to the motion to enforce the settlement agreement and requested a conference/evidentiary hearing on the matter.  ECF Dkt. #s 334-335.  On January 9, 2006, Judge Gwin referred the instant motion to enforce settlement to the undersigned along with any related subsequent matters or pleadings.  ECF Dkt. #337.  The undersigned scheduled the motion for conference and hearing, and after a plethora of filings relating to merely rescheduling the hearing, the parties and their counsel finally came before the undersigned on the motion.  ECF Dkt. #s 339-345.  Based upon this undersigned's scheduling of this hearing, the undersigned denies Defendants' motion for conference/evidentiary hearing as moot.  ECF Dkt. #335.

Plaintiffs thereafter filed a motion to vacate Judge Gwin's Order marking the case as settled and dismissed and also moved to withdraw their motion to enforce the settlement agreement.  ECF Dkt. #s 347-348.  These filings fall into related filings concerning the motion to enforce settlement that Judge Gwin referred to the undersigned and shall be addressed herein.

On January 31, 2006, the undersigned conducted a status conference and evidentiary hearing on the motions with Attorneys Andrew Kabat and Shannon Polk, counsel for Plaintiffs Bosley and Brown, and Attorneys David Marburger, Stephen Bolton, counsel for Defendants 21 WFMJ and WFMJ Television, Inc., Attorney John Juhasz, Jr., counsel for Defendant Michelle Nicks, and Attorney James E. Lanzo, counsel for Defendant John Urchek, present. Before embarking on an evidentiary hearing, the undersigned attempted to reach consensus among the parties as to the existence of a settlement and its terms.  Unfortunately, those attempts were unsuccessful.  The undersigned thereafter conducted the evidentiary hearing, where Attorney Kabat testified, as did Attorney Bolton, Attorney Marburger and Attorney Bruce Baumgartner, a partner at the law firm

of Baker & Hostetler, LLP, who did not participate in the original negotiations but was present at a December 6, 2005 meeting between Attorney Marburger and Attorneys Kabat and Polk.**I.**

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has held that strong public policy encourages the settling of cases without litigation, and courts should uphold settlement agreements whenever it is equitable to do so. *Graley v. Yellow Freight Sys., Inc.*, 221 F.3d 1334 (Table), No. 98-4166, 2000 WL 799779, at *4 (6th Cir. June 14, 2000), unpublished,[1] citing *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S. Ct. 165, 50 L. Ed. 2d 140 (1976). Federal district courts have the inherent power to enforce settlement agreements entered into by litigating parties. *Id.*, citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.1992) (citing *Brock v. Scheuner*, 841 F.2d, 151, 154 (6th Cir. 1988)); *Aro Corp.*, 531 F.2d at 1370 (citing *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir.1973)); *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967). This inherent power of the court extends to enforcing oral settlement agreements that the parties make outside of the presence of the court. *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 76-77 (6th Cir. 1985). However, when enforcing the settlement agreement, "the court is not permitted to alter the terms of the agreement, but rather it must enforce the settlement as agreed to by the parties." *Graley,* 2000 WL 799779, at *4 (citation omitted).

In *Re/Max Intern., Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001), the Sixth Circuit Court of Appeals emphasized that when the parties have agreed on the essential terms of a

---

[1]    The undersigned acknowledges that *Graley* is an unpublished opinion and citations to unpublished decisions are disfavored. 6th Cir. R. 28(g). However, Rule 28(g) does not preclude a court from considering the persuasive reasoning of unpublished cases. *E.E.O.C. v. Harbart-Yeargin, Inc.,* 266 F.3d 498, 518 (6th Cir. 2001); *Managed Health Care Assocs. v. Kethan*, 209 F.3d 923, 929 (6th Cir. 2000). The undersigned finds that the reasoning in *Graley* is persuasive.

settlement and they have yet to memorialize the agreement in writing, the parties are nevertheless bound by the oral agreement. The Sixth Circuit further found that the parties' objective acts in *Re/Max* reflected that they had reached an agreement, such as Realty One's communications to its employees in a newsletter that an agreement had been reached and Re/Max's attempts to consummate the oral agreement by preparing a written document. *Id.* In *Graley*, the Sixth Circuit affirmed the district court's granting of the defendant's motion to enforce an oral settlement agreement after the parties had represented to the court before a hearing that they had reached an oral settlement that would "resolve the entire case." 2000 WL 799779, at *4. The Sixth Circuit affirmed the district court's finding that an oral settlement existed based upon these representations of the parties to the court and plaintiff's failure to present any evidentiary basis for finding that the essential terms remained in dispute. *Id.* at *8. The Court first found that the district court did not err in determining that the parties had agreed to the essential terms of the contract. The transcript of the hearing before the court indicated that the parties represented that an agreement had been negotiated and neither the plaintiff nor his attorney stated that any of the settlement terms still needed resolution. *Id.* at *4. The Court further held that the oral settlement agreement was not a tentative agreement merely because it was not placed on the record. *Id.* at *5. The Court held that "[w]hen parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Id.* at *6, citing *Brock*, 841 F.2d at 154.

## II.    ANALYSIS

Based upon the applicable law, the actions of the parties, their lengthy briefs, and the transcript of the evidentiary hearing, the undersigned recommends that the Court grant Plaintiff's

motion to enforce the settlement agreement reached on November 23, 2005, deny Plaintiff's motion to vacate the Court's November 26, 2005 Order of settlement, and deny Plaintiff's motion to withdraw his motion to enforce the settlement agreement reached on November 23, 2005. ECF Dkt. #s 333, 347, 348.

The undersigned notes that it was Defendants WFMJ Television, Inc., Michelle Nicks, and John Urchak who filed the notice of settlement representing to the Court that they had effectively reached a settlement with Plaintiffs. ECF Dkt. #329. Defendants represented that the documents that completed the settlement were in the drafting process and Defendants informed the Court that no need existed to impanel a jury for the trial on Monday, November 28, 2005. *Id.* Defendants obviously believed that they had indeed settled the entire case with Plaintiffs. *Id.* The undersigned also notes that Plaintiffs did not object to the notice of settlement filed by Defendants. These representations to the Court are similar to those made to the Court in *Graley*, although the representations in *Graley* were made orally before the Court while those here were made in writing by the parties who are now opposing the finding that an oral agreement to settle the case existed.

Nevertheless, these written representations to the Court, combined with the testimony at the evidentiary hearing, lead the undersigned to conclude that the parties in this case had indeed settled the entire case. Both of the attorneys who entered into the oral agreement consistently testified as to the essential terms of the oral settlement, including the agreed-upon amount that Defendants would pay Plaintiffs, confidentiality as to that amount, a mutual release of all claims by all parties, which the undersigned finds included Defendants' counterclaims, a release of every party named in Plaintiffs' complaint, which includes those individuals, "affiliates, employees, agents, parents, or subsidiaries of Defendants 21 WFMJ, WFMJ Television, Inc. . . . and/or entities otherwise

-5-

associated with these Defendants who had the right and ability to supervise the activities alleged herein and received a direct financial benefits from this misconduct" and those "owners, officers, employees, and/or agents of Defendants 21 WFMJ, WFMJ Television, Inc. . . . who have directly or indirectly participated in the illegal distribution, copying, reproduction, selling, and/or illegal editing of copyrighted works owned by Plaintiffs and/or who had the right and ability to supervise the activities alleged herein and received a direct financial benefit from this misconduct", and language in the judgment entry of settlement indicating that Plaintiffs would pay the court costs, even if Defendants actually pay or paid those costs.  ECF Dkt. #1 at 4-5.  The following testimony supports these essential terms.

Attorney Kabat, counsel for Plaintiffs, and Attorney Bolton, counsel for Defendants, were the only two parties to the oral conversations where a settlement was reached.  Attorney Kabat testified at the evidentiary hearing that he and Attorney Bolton agreed on the amount to be paid to Plaintiffs to settle the case with all Defendants, and discussed a confidentiality agreement.  ECF Dkt. #357 at 8.  Attorney Bolton confirmed in his testimony that he and Attorney Kabat agreed on the amount that Defendants would pay Plaintiffs in order to settle the case.  ECF Dkt. #357 at 83.  He also confirmed that he informed Attorney Kabat that he was speaking on behalf of all Defendants.  *Id.*  Accordingly, the parties have agreed on the amount that Defendants will pay Plaintiffs.

Attorney Kabat also testified that Attorney Bolton informed him that a confidentiality agreement was necessary and when Attorney Kabat said that the only thing that Plaintiff would agree to keep confidential was the amount of the settlement, Attorney Bolton said "that will work."  *Id.*  Attorney Kabat further testified that Attorney Bolton represented that he was negotiating on behalf of all Defendants "and this would resolve the case for all of the defendants."  *Id.*

-6-

Attorney Bolton testified that he and Attorney Kabat discussed the fact that Defendants wanted a confidentiality agreement and Attorney Kabat informed Attorney Bolton that Plaintiffs would agree to keep only the amount of the settlement confidential and not the fact of settlement. *Id.* at 84. When asked what he understood Attorney Kabat's comment about confidentiality to mean, Attorney Bolton testified that: "the fact of settlement was a public - - was going to be a public record in any event. . . . The - - that the figure that we agreed upon was off limits to be discussed anywhere, except - - I assumed that later on, a settlement agreement would be negotiated, and there would be reasonable limitations on that, such as you can tell your accountant, or you can use it for tax purposes and that kind of thing, that you normally see in a release and settlement agreement." *Id.* at 84-85. Attorney Bolton also testified that he did indeed call Attorney Kabat back after their first telephone conversation where they agreed on a settlement amount and they further discussed confidentiality. *Id.* at 98. Attorney Bolton related that he told Attorney Kabat in the second conversation that he needed a confidentiality agreement and Attorney Kabat told him that his clients would agree to keep the amount of the settlement confidential, but not the fact of the settlement. *Id.* at 98-99. Attorney Bolton recalled telling Attorney Kabat that "that is reasonable" and he did not seek to further limit, modify or qualify the terms of confidentiality during this conversation. *Id.* at 99. Accordingly, the parties have agreed that the confidentiality agreement covers the amount that Defendants will pay Plaintiffs in settlement of all claims.

Attorney Kabat further testified that he and Attorney Bolton agreed that "there would be no claims pending against our clients, the plaintiffs, and there would be no claims pending against the defendants that were named in the lawsuit" and he testified that they had no discussion about releasing The Vindicator, C-Boss, Inc., Joe Lupo, any member of the Sheriff's Department, or any

-7-

other witness in the lawsuit.  *Id*. at 8-9.  Attorney Bolton confirmed that he and Attorney Kabat discussed the issue of the mutual releases by the parties.  ECF Dkt. #357 at 84, 92-93.  On Attorney Kabat's cross-examination of Attorney Bolton, Attorney Bolton testified that Attorney Kabat's description of the mutual releases seemed reasonable when Attorney Kabat described the mutual releases as "[t]he plaintiffs would release claims against the defendants; defendants would release the claims against the plaintiffs."  *Id*. at 95. Attorney Bolton immediately thereafter indicated at the evidentiary hearing, however, that at the time that they were discussing mutual releases, he did not believe that Defendants' counterclaims would be included in the releases.  *Id*. However, Attorney Bolton did concede that it is typical that when parties talk about mutual releases, they usually release both sides from any and all claims.  *Id*. at 97.  Attorney Bolton also admitted that he did not mention to Attorney Kabat when they discussed mutual releases on the phone that the releases were qualified, modified or limited in any way.  *Id*. Attorney Bolton's testimony admitting that he did not qualify, modify or limit the typical mutual release language to exclude the counterclaims when settling the case with Attorney Kabat negates Defendants' argument that subsequent comments by Attorney Kabat and Polk stating that Defendants could maintain their appeal of the Court's ruling on their counterclaims in some way modified the settlement agreement.

Attorney Kabat also testified that in their oral conversation, he and Attorney Bolton agreed that mutual releases would include "the parties to the litigation."  ECF Dkt. #357 at 17-18.  He further stated that he and Attorney Bolton agreed that "there would be no claims pending against our clients, the plaintiffs, and there would be no claims pending against the defendants that were named in the lawsuit".  *Id*. at 8-9.  Attorney Bolton testified that he found it "reasonable" to interpret that a mutual release meant that the plaintiffs would release all claims against the defendants and the

-8-

defendants would release all claims against the plaintiffs.  *Id*. at 95.

Accordingly, the undersigned recommends that the Court find that the "the parties to the litigation" and the "defendants that were named in the lawsuit" that are included in the settlement and release include those parties that Plaintiffs identified in their complaint, including 21 WFMJ, WFMJ Television, Inc., Michelle Nicks, John Urchek, and the "XYZ Companies 1-50" which are "affiliates, employees, agents, parents, or subsidiaries of Defendants 21 WFMJ, WFMJ Television, Inc. . . . and /or entities otherwise associated with these Defendants who had the right and ability to supervise the activities alleged herein and received a direct financial benefits from this misconduct" and those "owners, officers, employees, and/or agents of Defendants 21 WFMJ, WFMJ Television, Inc. . . . who have directly or indirectly participated in the illegal distribution, copying, reproduction, selling, and/or illegal editing of copyrighted works owned by Plaintiffs and/or who had the right and ability to supervise the activities alleged herein and received a direct financial benefit from this misconduct." ECF Dkt. #1 at 4-5.  Thus, so long as Defendants can show that the parties that Defendants assert are involved in the settlement and release fall under Plaintiffs' language in their complaint, the undersigned recommends that the settlement and release include these parties as well as those specifically named.

Finally, Attorneys Kabat and Bolton also agreed in their oral conversations on the judgment entry language that would state that Plaintiffs paid the court costs, even if it was actually Defendants who paid them.  Attorney Kabat testified at the hearing that Attorney Bolton informed him during their conversation that it was necessary for the judgment entry of settlement to reflect that Plaintiffs paid the court costs. ECF Dkt. #357 at 14.  He indicated that he had no problem with the language of the entry stating that Plaintiffs paid the court costs so long as Defendants were actually paying

the costs. *Id.* Attorney Bolton also testified that he informed Attorney Kabat that the judgment

entry of settlement must contain language stating that Plaintiffs paid the court costs, even if

Defendants actually paid the costs, and Attorney Kabat stated that this was acceptable to him. *Id.*

at 85-86.

As for any further terms argued by the parties to be in dispute or otherwise settled, the

undersigned recommends that the Court find that the oral settlement agreement did not encompass

those terms and they are not material as Defendants failed to bring these disputed terms to the

attention of the Court when they filed their notice of settlement.[2]

## III.     CONCLUSIONS AND RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that the Court:

1.     GRANT Plaintiffs' motion to enforce the settlement agreement reached on
       November 23, 2005 (ECF Dkt. #333);

2.     DENY Plaintiffs' motion to vacate the Court's November 26, 2005 Order of
       settlement (ECF Dkt. #347);

3.     DENY Plaintiffs' motion to withdraw their motion to enforce the settlement
       agreement reached on November 23, 2005 (ECF Dkt. #s 348);

4.     Find that the parties agreed to the following terms in their oral agreement of
       settlement:

       a.     the amount that Defendants would pay Plaintiffs, which has not been in
              dispute;

---

[2]     The undersigned notes that Defendants may also be judicially estopped from challenging
the enforceability of the oral settlement because they informed the Court that the parties had settled the
instant case on the eve of trial, thereby obviating the need to impanel a jury.  Courts are entitled to rely on
such representations contained in submissions to the Court.  *See, e.g., Correia v. DeSimone,* 614 N.E.2d
1014, 1016  (Mass. App. Ct. 1993) (protecting the integrity of the judicial process "would be ill served if
those intimately involved in that process, litigants, attorneys, and judges, *could not rely on declarations of
settlement made to the court* . . . It defies logic and fundamental principles of fairness to allow a represented
party who has sought justice in a forum to contradict and undermine an agreement it reached and
acknowledged in that same forum, especially when the judge and the other litigants appear to have relied on
that acknowledgment.") (emphasis added).

-10-

b.    the confidentiality as to only the amount that Defendants pay Plaintiffs;

c.    a mutual release of all claims by all parties, which includes Defendants' counterclaims;

d.    a release of every party named in Plaintiffs' complaint, which includes those individuals, "affiliates, employees, agents, parents, or subsidiaries of Defendants 21 WFMJ, WFMJ Television, Inc.... and /or entities otherwise associated with these Defendants who had the right and ability to supervise the activities alleged herein and received a direct financial benefits from this misconduct" and those "owners, officers, employees, and/or agents of Defendants 21 WFMJ, WFMJ Television, Inc., "who have directly or indirectly participated in the illegal distribution, copying, reproduction, selling, and/or illegal editing of copyrighted works owned by Plaintiffs and/or who had the right and ability to supervise the activities alleged herein and received a direct financial benefit from this misconduct." So long as Defendants can establish that various parties fall under this language, the Court should include them in the settlement and release;

e.    language in the judgment entry indicating that Plaintiffs would pay the court costs, even if Defendants actually pays or paid those costs.

Date:  February 24, 2006                          /s/George J. Limbert
                                                  George J. Limbert
                                                  United States Magistrate Judge


     ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).