UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                       :
CATHERINE BOSLEY *et al.*,           :     CASE NO. 4:04-CV-2529
                                                       :
        Plaintiffs,            :
                                                       :     JUDGE JAMES S. GWIN
vs.                                                  :
                                                       :     ORDER AND OPINION
21 WFMJ, *et al.*                         :     [Resolving Doc. Nos. 333, 347, 348,
                                                       :      371, 372, 380, 381]
        Defendants.          :
                                                       :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With their motion, the Plaintiffs move to enforce the settlement that they say the parties agreed to on November 23, 2005 [Doc. 333]. On February 24, 2006, Magistrate Judge George J. Limbert, on referral from this Court, recommended that the Court enforce the settlement and grant the Plaintiffs' motion [Doc. 367]. Although the Defendants filed objections to the Report [Docs. 376-78], the Plaintiffs moved that they be stricken as untimely [Doc. 380]. The Defendants concede that the objections were untimely but move the Court to consider them anyway [Doc. 381].

For the reasons described below, the Court adopts the Magistrate's Report. The Court finds that the parties agreed, in their oral agreement of settlement, to the terms as outlined in the Magistrate's Report & Recommendation. Therefore, the Court GRANTS the Plaintiffs' motion to enforce the settlement agreement reached on November 23, 2005; DENIES the Plaintiffs' motion to vacate the Court's November 26, 2005 Order of Settlement; DENIES the Plaintiffs' motion to

-1-

Case No. 4:04-CV-2529
Gwin, J.

withdraw their motion to enforce the settlement agreement; DENIES the Defendants' motions to supplement the record; GRANTS the Plaintiffs' motion to strike the Defendants' objections; DENIES the Defendants' motion for leave to file objections to the Magistrate Judge's Report And Recommendation; and ADOPTS Magistrate Judge Limbert's Report & Recommendation in full.

## I. Background

The history of this case is long and tumultuous. The Magistrate's Report & Recommendation provides a full recitation of the relevant facts. In brief, on November 23, 2005, the parties purported to reach an oral agreement to settle the case [Doc. 329]. Soon thereafter, the Plaintiffs filed the present motion to enforce the settlement agreement. With their motion to enforce the settlement, the Plaintiffs contend that Defendants attempted to renege upon their contract to settle the case by conditioning the execution of settlement documents upon Plaintiffs' agreement to additional terms never discussed and never agreed upon. [Doc. 333].

This Court referred the matter to Magistrate Judge George J. Limbert pursuant to Local Rule 72.1. On February 24, 2006, Magistrate Judge Limbert issued a Report & Recommendation. The Report recommends, *inter alia*, that the Court enforce the parties' oral settlement agreement.

On March 15, 2006, nineteen days after the Report issued, Defendants Michelle Nicks, John Urchek, and WFMJ Television, Inc. filed objections to the Report. The Plaintiffs moved to strike the objections as untimely [Doc. 380]. In response, the Defendants admitted that they miscalculated the deadline for filing their objections. Arguing that "excusable neglect" caused the delay, they asked the Court to consider their objections and review the magistrate's Report and Recommendation. [Doc. 381].

## II. Standard of Review

Case No. 4:04-CV-2529
Gwin, J.

The Sixth Circuit holds that a district court bears no obligation to review a magistrate's report unless a party has filed a timely objection. *Thomas v. Arn*, 474 U.S. 140, 145 (1985). Absent objection, a district court may adopt the magistrate's report without review. *Id.* at 149. Therefore, as a threshold matter the Court determines whether the Defendants' untimely objections to the Magistrate's Report should be stricken.

### III.  Analysis

**A.  Whether Untimely Objections Should be Considered**

The Federal Rules of Civil Procedure state that "[w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." Fed. R. Civ. P. 72(a). Rules 6(a) and 6(e) elaborate on the process for calculating the allowed time. Fed. R. Civ. P. 6(a),(e). Under the proper computation, the parties had until March 13, 2006 to object to the Report. The Defendants admit that they filed their objection two days past this deadline, on March 15, 2006.

The Sixth Circuit has interpreted Rule 72 to mean that a party that fails to file its objections within ten days of service (using the Rule 6 calculation method) waives its right to appeal. *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) (holding that "a party shall be informed by the magistrate that objections must be filed within ten days or further appeal is waived"). Moreover, Northern District of Ohio Local Rule 72.3(b) states that "failure to file timely objections within the ten (10) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure."

Under some circumstances, a court may consider an untimely filed objection. Federal Rule

-3-

Case No. 4:04-CV-2529
Gwin, J.

of Civil Procedure 6(b) describes the method for calculating filing deadlines and the conditions under which a court may modify those deadlines. The Rule provides that "where the failure to act was the result of excusable neglect" a court may enlarge the time period. Fed. R. Civ. P. 6(b). And Local Rule 72.3(b) allows the late-filing party to avoid waiver of review upon "a showing of good cause" for the failure to timely object.[1] The Court therefore determines whether the Defendants show "excusable neglect" or "good cause" for their untimely objections.[2]

To find excusable neglect, a court need not find that circumstances beyond the party's control caused the late filing. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). However, the Supreme Court holds that "mistakes construing the rules do not usually constitute 'excusable' neglect." *Id*.

Here, the Defendants do not allege that any hardship or unusual external circumstances contributed to their delinquency. Their only justification for their tardiness is their misunderstanding of the rules. The Defendants go to great lengths to argue that their interpretation was common, and thus reasonable. However, as the Plaintiffs' point out, well-known and readily accessible legal authority describes the proper interpretation of the relevant rule:

> Rule 6(e) is amended to remove any doubt as to the method for extending the time to respond after service by mail, leaving with the clerk of court, electronic means, or other means consented to by the party served. Three days are added after the prescribed period otherwise expires under Rule 6(a). Intermediate Saturdays, Sundays, and legal holidays are included in counting these added days.

---

[1] Federal Rule of Civil Procedure 6(b) does not apply to local rules of court. *Kallay v. Cmty. Nat'l Life Ins. Co.*, 52 F.R.D. 139, 142 (N.D. Okl. 1971). Therefore, the "excusable neglect" standard applies only to Federal Rule of Civil Procedure 72(a) in this case and not to the time period established by Northern District of Ohio Local Rule 72.3(b).

[2] The "good cause" standard is generally less stringent than the "excusable neglect" standard. *See Dimmitt v. Ockenfels*, 407 F.3d 21, 24 (1st Cir. 2005).

-4-

Case No. 4:04-CV-2529
Gwin, J.

Fed. R. Civ. P. 6(e) advisory committee's note.  Moreover, the note gives an illustration that is largely similar to the present situation:

> Application of Rule 6(e) to a period that is less than eleven days can be illustrated by a paper that is served by mailing on a Friday. If ten days are allowed to respond, intermediate Saturdays, Sundays and legal holidays are excluded in determining when the period expires under Rule 6(a). If there is no legal holiday, the period expires on the Friday two weeks after the paper was mailed. The three added Rule 6(e) days are Saturday, Sunday, and Monday, which is the third and final day to act unless it is a legal holiday.

*Id.*  This language, of which the Defendants should have been aware, leaves no room for the Defendants' misinterpretation.

Moreover, by filing their objection on what they believed was the deadline based on a relatively sophisticated calculation process, the Defendants assumed the risk that they would be mistakenly untimely file. The Defendants were well aware of the potential difficulty in determining the proper deadline: Defendant WFMJ Television was forced to re-file its intention to object [Doc. 369] after having already misinterpreted the rule once.  Therefore, the Defendants cannot claim to have been completely caught unaware; they had already wrestled with question of the proper computation.  They were on notice of the nature of the computation and the risk of failing to properly compute the time.  Despite this, they chose to err not on the side of caution, but of risk.

As stated, "mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Servs.*, 507 U.S. at 392.  For the reasons described above, this case presents no basis for an exception to that rule.  The Defendants' objections were untimely and are stricken.

Because no party filed a valid objection to the Magistrate's Report & Recommendation, this Court need not review the Magistrate's findings.  *Thomas*, 474 U.S. at 145.  Instead, the Court

Case No. 4:04-CV-2529
Gwin, J.

may–and does–adopt the Report without review. *Id.*

## B. The Magistrate's Report Reviewed

Even if the Court were required to review the Magistrate's report, the Court would still adopt the Magistrate's recommendation. Upon review of the record and the Magistrate's Report, this Court finds the analysis thorough and the findings well-substantiated. The Defendants' objections to the Report do not persuade the Court otherwise, they approach the laughable. This Court therefore adopts Magistrate Judge Limbert's Report & Recommendation in full.

In that Report & Recommendation, Magistrate Judge Limbert found the parties had reached a settlement:

> [T]he parties in this case had indeed settled the entire case. Both of the attorneys who entered into the oral agreement consistently testified as to the essential terms of the oral settlement, including the agreed-upon amount that Defendants would pay Plaintiffs, confidentiality as to that amount, a mutual release of all claims by all parties, which the undersigned finds included Defendants' counterclaims, a release of every party named in Plaintiffs' complaint, which includes those individuals, "affiliates, employees, agents, parents, or subsidiaries of Defendants 21 WFMJ, WFMJ Television, Inc. . . . and/or entities otherwise associated with these Defendants who had the right and ability to supervise the activities alleged herein and received a direct financial benefits from this misconduct" and those "owners, officers, employees, and/or agents of Defendants 21 WFMJ, WFMJ Television, Inc. . . . who have directly or indirectly participated in the illegal distribution, copying, reproduction, selling, and/or illegal editing of copyrighted works owned by Plaintiffs and/or who had the right and ability to supervise the activities alleged herein and received a direct financial benefit from this misconduct. . .

[Doc. 367 at *5-6].

In reaching this recommendation, the Magistrate Judge relied upon uncontradicted evidence. Recall, the parties acknowledge agreement upon the amount of the settlement but disagreed regarding two elements of the settlement they had reached: 1) did the Defendants agree to waive any claim of confidentiality except as to the amount of the settlement; and 2) did the Plaintiff agree to

-6-

Case No. 4:04-CV-2529
Gwin, J.

release claims against parties associated with the Defendant although not specifically joined as a defendant.

Regarding the extent of the confidentiality agreement, Plaintiffs Attorney Kabat and Defense Attorney Bolton were the only parties to the conversation during which the settlement was reached. Plaintiffs Attorney Kabat described his discussion with Defense Attorney Bolton:

> A    Our conversation [regarding confidentiality] was very simple. Mr. Bolton said to me, we need confidentiality. And I said to him, the only thing my client is willing to agree to is to keep the amount of the settlement confidential. He said to me, that will work. That was the extent of the conversation.

(Hr'g Mot. Enforce Settlement, Tr. at 17, Jan. 30, 2006.)

Importantly, Defendant Attorney Bolton agreed that the sole agreement reached only required the Plaintiffs to keep the amount of the settlement confidential. He testified:

> Q    What I agreed to that night was to keep the amount of the settlement confidential; correct?
>
> A    That's what I just said.
>
> Q    Nothing more; nothing less; correct?
>
> A    I didn't understand that to be exclusive.
>
> Q    But there was nothing discussed?
>
> A    But there was nothing else to talk about. That was -- that was -- all we had talked about that night was price.
>
> Q    Correct. And you thought when you walked away, in your words, that that meant that the figure, the amount your clients were going to pay, was off limits; right?
>
> A    I thought that the figure could not be discussed or referred to; right.
>
> Q    Right. And when I said to you, I will agree not to disclose the amount of the settlement, the figure, you said, okay, that will work. Do you remember that?

-7-

Case No. 4:04-CV-2529
Gwin, J.

> A   I don't remember saying that will work. What I remember saying is, that is reasonable.

(Hr'g Mot. Enforce Settlement, Tr. at 99, Jan. 30, 2006.) Defendant Attorney Bolton further testified:

> Q.   And after talking to me, the only thing that we had reached an agreement on was to keep the price confidential; right?
>
> A.   We had agreed to keep the one thing - - the one part of our agreement that we had actually come to terms on confidential, yes. I couldn't ask for more than that at the time.

(Hr'g Mot. Enforce Settlement, Tr. at 30, Jan. 30, 2006.)

With its filings and testimony, Defendants acknowledge that Bolton and Kabat agreed that only the amount of the settlement would be kept confidential. Defendants seem to contend that some unexpressed conditions needed to be included in the settlement contract before it became effective. In opposing the motion to enforce a settlement, Defendant WFMJ did not dispute the terms of the settlement claimed by Plaintiffs. Instead, the defendants argued that they should be permitted to bargain for additional terms after agreement had been reached. Thus, Defendant WFMJ says:

> "In that conversation and thousands of other informal settlement talks like it, the lawyers agreed whether there would be a payment of an amount, and upon several major issues needed for a final settlement agreement. *They did not agree to confine all settlement terms to those addressed on the phone; nor did they agree to confine all settlement terms that they did discuss to the literal words uttered in the conversation.*"

[Doc. 334 at *3, Bolton affidavit at ¶ 8].

Obviously, this is wrong. Under contract law, courts consider objective manifestations of intent, not undisclosed desires. Whether there has been meeting of minds or mutual assent is judged

Case No. 4:04-CV-2529
Gwin, J.

by objective standard, looking to expressed words of parties and their visible acts. Expressions of assent are sufficient to show a meeting of the minds, irregardless of some hope that the other party might later agree to some additional undisclosed condition, especially where the undisclosed condition vary from the expressed agreement.

Defendant Counsel makes the disingenuous argument that the parties had not understood a settlement had been reached. The argument is belied in numerous ways as described by the Magistrate Judge. First, Defendant Attorney Marburger filed a notice saying: "Defendants WFMJ Television, Inc., Michelle Nicks, and John Urchak hereby notify the Court that they have effectively reached a settlement with the plaintiffs. The documents consummating the settlement are being drafted now." [Doc. 329]. The filing nowhere said that negotiations were close but not closed. It nowhere made any request for additional time to complete claimed unfinished negotiations. Plaintiffs filed no objection to this notice. Obviously, the parties believed that a settlement was reached.

In reaction to this filing, the Court placed an order, saying, in part: "Upon representation of counsel that the above-captioned case has been settled between the parties, IT IS ORDERED that the docket be marked, "settled and dismissed with prejudice." [Doc. 331]. Neither Defendants, nor Plaintiffs filed any indication that the case had not been settled. In addition, for some reason, on December 27, 2006, Defendants filed a notice of appeal from certain of this Court's preliminary rulings. [Doc. 336]. In that filing, Defendants never contend that this Court erred in saying this case had been settled.

Attorney Bolton gave further testimony belying the argument that they did not understand a settlement had been reached. Referring the November 23, 2005, settlement conversation with

-9-

Case No. 4:04-CV-2529
Gwin, J.

Kabat, Bolton testified: "I do recall saying that I would try to provide a release or a settlement agreement, I don't remember which term I used, and a check within seven days." (Hr'g Mot. Enforce Settlement, Tr. at 91, Jan. 30, 2006.) This testimony begs the obvious question: if, as Defendants now contend, a settlement had not been reached, how could Bolton provide a release? If a settlement had not been reached, why would Bolton promise to get the settlement money to Kabat and Plaintiffs within seven days? If a settlement had not been reached, why were no arraignments made to discuss the conditions that Defendant now say were unresolved?

Defendant Counsel's belated claim that they did not intend to fully settle the case is not believed. Although acknowledging that Bolton expressed agreement to the confidentiality provision that only limited disclosure of the dollar value of the settlement, Defendants suggest that it could refuse settlement if Plaintiffs refused to accede to additional, and previously not disclosed, conditions. However, settlements, like all other contracts necessarily are determined by overt expressions. Undisclosed reservations cannot trump expressed conditions. Here, both Defense Attorney Bolton and Plaintiffs Attorney Kabat agreed that only the dollar amount of the settlement would remain confidential. That Plaintiffs do not agree to some later proposal to add to the settlement terms does not invalidate the agreement as to the original terms. No evidence suggests that Defendants anyway conditioned their agreement to the settlement on the subsequent resolution of undisclosed conditions. The Magistrate Judge got it completely correct.

Defendants make one further argument regarding why the settlement agreement they reached should not be enforceable. Defendants suggest that Bosley misled them when she failed to advise

Case No. 4:04-CV-2529
Gwin, J.

them that she might appear on the Oprey Winfrey television show to discuss the litigation.[3] In support of this argument, the Defendant show no material misstatement by Bosley's counsel, instead they argue Bosley had some duty to volunteer information that she might publicize the litigation.

Generally, silence cannot form the basis of a fraud claim. The failure to disclose a particular fact is only actionable where there exists a duty of disclosure. *See Burr v. Board of County Com'rs of Stark County*, 23 Ohio St.3d 69, 69, 491 N.E.2d 1101, 1102 (Ohio 1986) (holding that the first element of a fraud in the inducement claim is "a representation or, where there is a duty to disclose, concealment of a fact"). The circumstances under which the law recognizes such a duty have traditionally been limited to: (1) the existence of a fiduciary relationship between the parties, *see Schulman v. Wolske & Blue Co., L.P.A.*, 125 Ohio App.3d 365, 372, 708 N.E.2d 753, 758 (Ohio App. 10 Dist. 1998); and (2) relationships in which "one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Central States Stamping Co. v. Terminal Equipment Co., Inc.*, 727 F.2d 1405, 1409 (6th Cir. 1984) (citing *Smith v. Patterson*, 33 Ohio St. 70, 75-76 (Ohio 1877)).

The Defendants proffer no argument that such a relationship exists in the instant case. Indeed, the Court finds no reason why Plaintiffs would have any duty to inform the Defendants that Bosley may in the future discuss the instant lawsuit.

The Defendants' argument is ridiculous. First, Defendant WFMJ is a sophisticated corporation that has employed at least eight attorneys on this litigation, generating at least 394 filings to date. Second, the case originated with Bosley appearing at a Key West bar and taking her

---

[3] That the saga of this litigation would be of any interest to the television public speaks volumes regarding the intelligence of television audiences.

-11-

Case No. 4:04-CV-2529
Gwin, J.

clothes off to dance naked before an assemble mob, hardly the shy-and-retiring-type who would forgo embarrassing herself if it meant more publicity. Third, Bosley and Defendants are complete antagonists. Finally, Plaintiffs' counsel Kabat was clear that Bosley rejected any confidentiality provision other than one involving the value of the settlement. Nothing suggests the existence of a fiduciary relationship between the parties or that the Defendants imposed any confidence in Bosley. The Defendants' argument that the settlement contract was voidable because Bosley did not disclose any plans she had to go publicize the settlement fails.

Finally, the Magistrate Judge correctly found in Defendants' favor in concluding that the parties agreed to mutual releases and Plaintiffs were obligated to release all claims and every party named in Plaintiffs' complaint, including affiliates of Defendant WFMJ Television Inc. Plaintiffs' complaint alleged causes of action against affiliates and employees of affiliates of Defendant WFMJ.[4/] Describing the settlement discussion relating to who would be released, Plaintiffs Attorney Kabat testified:

> A  . . I asked him, since we were having a dispute as to the money, I said, who

---

[4/] In part, Plaintiffs's complaint alleged:

14. The identities of XYZ Companies 1-50, PDQ Companies 1-50, John Does 1-50, and Jane Does 1-50 are not presently known. This Complaint will be amended to include the names of such individuals and entities when identified.

15. Upon information and belief, XYZ Companies 1-50 are affiliates, employees, agents, parents, or subsidiaries of Defendants 21 WFMJ, WFMJ Television, Inc., and/or Andrews Cycles, Inc., and/or entities otherwise associated with these Defendants who had the right and ability to supervise the activities alleged herein and received a direct financial benefit from this misconduct.

16. Upon information and belief, John Does 1-50 are owners, officers, employees, and/or agents of Defendants 21 WFMJ, WFMJ Television, Inc., Andrew Cycles, Inc., and/or and/or who had the right and ability to supervise the activities alleged herein and received a direct financial benefit from this s misconduct.

[Doc. 1 at *3-4]

-12-

Case No. 4:04-CV-2529
Gwin, J.

> are you negotiating for? Is it just WFMJ, because I had not heard Mr. Lanzo say a word that day or Mr. Juhasz say a word that day, and I was hopeful that maybe I could get some money out of Miss Nicks and Mr. Urchek. And Mr. Bolton said to me, no, I'm negotiating *on behalf of all the defendants, and this will resolve the case for all of the defendants* (Emphasis added.).

(Hr'g Mot. Enforce Settlement, Tr. at 9, Jan. 30, 2006.) Kabat further explained "[t]hat there would be no claims pending against our clients, the plaintiffs, and there would be no claims pending *against the defendants that were named in the lawsuit*." (Hr'g Mot. Enforce Settlement, Tr. at 10, Jan. 30, 2006.) (Emphasis added.) As described above, Plaintiffs' complaint made claims against "affiliates, employees, agents, parents, or subsidiaries of Defendants 21 WFMJ, WFMJ Television, Inc., and/or entities otherwise associated with these Defendants who had the right and ability to supervise the activities alleged . . ." Defense Attorney Bolton gave similar testimony. He testified that "[t]he plaintiffs would release claims against the defendants; defendants would release the claims against the plaintiffs." (Hr'g Mot. Enforce Settlement, Tr. at 96, Jan. 30, 2006.)

A general release, not restricted by its terms to particular claims or demands, ordinarily releases all claims and demands which could have been brought and were known to the parties at the time of the release. Unless expressly excepted, known claims die with the general release. *Overberg v. Lusby*, 727 F. Supp. 1091, 1093 (E.D. Ky. 1990) ("If the parties intended to leave some things out of a general release, then 'their intent to do so should be made manifest.'") (quoting *United States v. William Cramp & Sons Ship & Engine Bldg. Co.*, 206 U.S. 118, 128 (1907)), aff'd 921 F.2d 90 (6th Cir. 1990).

The Magistrate Judge found the settlement released all claims. The Magistrate had more than sufficient support for this finding and the Court adopts the Magistrate Judge's finding and reasoning.

-13-

Case No. 4:04-CV-2529
Gwin, J.

C. The Defendants' Motion to Supplement

Defendants separately move this Court to supplement the record of their January 30, 2006 hearing before Magistrate Judge Limbert to include their affidavits averring that Magistrate Limbert told them during settlement discussions that he had been directed to enforce the settlement agreement. The motion is odd for several reasons. First, Defendants allege that Magistrate Judge Limbert made this statement on January 30, 2006, during settlement discussions *before the hearing*. Despite having an ability to make a record of the statement in the hearing that followed the settlement discussions, Defendants said nothing, suggesting that Defendants' counsel attached no significance to the purported statement. Any competent counsel understand it is important for the record to reflect all meaningful case-related matter.

Moreover, the hearing on the motion to enforce the settlement closed on January 30, 2006. Judge Limbert then afforded the parties two weeks to file briefing. Defendants then filed a brief, an amended brief, a forty-one page supplemental brief and a substitute brief. Despite hundreds of pages of briefing (most would say overkill that reflects their weak argument) the Defendants made no argument that Judge Limbert would not fairly decide the issues. That defense counsel would spend tens of thousands of their client's money on the briefing papers betrays their later claim that they interpreted Judge Limbert's statement to reflect that no fair consideration of their arguments would be given.

Only when Judge Limbert decided the case against them on February 24, 2006, did Defendant file this belated motion to supplement the record result. The motion is pointless. First, the Court referred the matter to Magistrate Judge Limbert for a report and recommendation. With his February 24, 2006, Report and Recommendation, the referral ends. Despite numerous

Case No. 4:04-CV-2529
Gwin, J.

opportunities to include the affidavits in the record before the Magistrate made his Report, Defendant failed to do so. They have now filed the affidavits with this Court and the affidavits are part of this Court's record. No purpose would be served by including the affidavits as if they had been before Judge Limbert.

Second and as described below, without justification, the Defendants have failed to timely object to the Magistrate's Report and Recommendation. Having failed to comply with this time requirement, the Defendant cannot appeal. Civil Rule 72 says, in part:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.

In *Thomas v. Arn*, the Sixth Circuit found that a plaintiff's failure to file timely objection to the report and recommendation of a magistrate waived further appeal to the circuit court. 728 F.2d 813 (6th Cir. 1984) (citing *Walters*, 638 F.2d at 947). The Supreme Court affirmed. *Thomas*, 474 U.S. at 140; *United States v. Hunter*, 4 Fed. Appx. 295, 2001 WL 128297 at *4 (6th Cir. 2001) ("In order to preserve an issue for appeal, a defendant is required to file objections with the district court to the findings of the magistrate judge.")

Because the Defendants' failure to timely object waived their right to appellate review of this holding, the Defendants' motions to supplement the record is now moot. Accordingly, the motion is denied.

### IV. Conclusion

For the reasons described below, the Court finds that the parties agreed, in their oral agreement of settlement, to the terms as outlined in the Magistrate's Report & Recommendation. Therefore, the Court **GRANTS** the Plaintiffs' motion to enforce the settlement agreement reached

Case No. 4:04-CV-2529
Gwin, J.

on November 23, 2005; **DENIES** the Plaintiffs' motion to vacate the Court's November 26, 2005 Order of Settlement; **DENIES** the Plaintiffs' motion to withdraw their motion to enforce the settlement agreement; **DENIES** the Defendants' motions to supplement the record; **GRANTS** the Plaintiffs' motion to strike the Defendants' objections; **DENIES** the Defendants' motion for leave to file objections to the Magistrate Judge's Report And Recommendation; and **ADOPTS** Magistrate Judge Limbert's Report & Recommendation in full.

IT IS SO ORDERED.


Dated: April 7, 2006                s/    *James S. Gwin*
                                    JAMES S. GWIN
                                    UNITED STATES DISTRICT JUDGE